ELLEN MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C.  20044-7611
REGINA R. BELT, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone:  (907) 271-3456
Facsimile:   (907) 271-5827
regina.belt@usdoj.gov

Attorneys for Plaintiff United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br>    v.<br>GARY C. HINKLE and JUDITH A. HINKLE,<br><br>                      Defendants. | No. 3:05-CV-0111 (RRB) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF UNITED STATES' UNOPPOSED MOTION FOR ENTRY OF "CERCLA CONSENT DECREE FOR SETTLEMENT OF RESPONSE COSTS AND CIVIL PENALTY CLAIMS ASSOCIATED WITH THE RIVER TERRACE RV PARK SITE"**

**I. INTRODUCTION**

The United States brought this suit against Gary and Judith Hinkle ("the Hinkles" or "Defendants") pursuant to Sections 107, 109 and 122 of the Comprehensive Environmental

Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9607, 9609, and 9622, seeking: (1) recovery of the United States' response costs associated with the removal action undertaken by the Hinkles at the River Terrace RV Park Site in Soldotna, Alaska pursuant to an administrative order on consent ("AOC") that they had entered into with the Environmental Protection Agency ("EPA"); and (2) assessment of a civil penalty against the Hinkles for their failure to reimburse EPA for response costs incurred by the United States in connection with overseeing that removal action and enforcing the AOC.

The parties entered into settlement negotiations shortly after suit was filed. Those negotiations produced the proposed "CERCLA Consent Decree For Settlement of Response Costs and Civil Penalty Claims Associated with the River Terrace RV Park Site" ("Consent Decree" or "Decree") that has been lodged with the Court.

Following lodging of the Decree, the United States published notification in the Federal Register of the availability of the Decree for public review and comment for a period of thirty days. No comments were received, and no other information has come to the attention of the United States that would warrant modification of, or withdrawal from, the proposed Decree. Accordingly, for the reasons appearing in this memorandum, the United States has moved to have the Consent Decree entered as an order of the Court.

## II. STATUTORY BACKGROUND

Congress enacted CERCLA in 1980 in response to concerns about the environmental and health risks emanating from hazardous waste sites. *United States v. Bestfoods*, 524 U.S. 51, 55 (1998), *citing Exxon Corp. v. Hunt*, 475 U.S. 355, 358-59 (1986); *3550 Stevens Creek Associates v. Barclays Bank*, 915 F.2d 1355, 1357 (9th Cir. 1990). It created a mechanism for cleaning up hazardous waste sites and imposed liability for the costs of doing so on those responsible for creating the contamination. *Bestfoods*, 524 U.S. at 55-56 (legislative history citations omitted); *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 7 (1989). Specifically, section 104(a) of CERCLA, 42 U.S.C. §

9604(a), authorizes the President[1]/ to address contamination at a site by taking "response actions,"[2]/ whenever there is a "release"[3]/ or threatened release of any hazardous substance into the environment and whenever there is a release or substantial threat or a release of any pollutant or contaminant which may present an imminent and substantial danger to public health or welfare. Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), authorizes the President, when he determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, to issue administrative orders necessary to protect public health or welfare or the environment. *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994). Under the provisions of Section 122 of CERCLA, the President is authorized, in his discretion, to enter into agreements with any person, including responsible parties,[4]/ to perform any response action if he determines that such action will be done properly by that person, 42 U.S.C. § 9622(a).

Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provides that a potentially responsible party

---

[1]/ The President's authority under Sections 104(a), 106(a) and 122 of CERCLA relevant to this action was delegated to the Administrator of EPA by Executive Order No. 12580, 52 Fed. Reg. 2923, 2925 (Jan. 29, 1987). That authority was re-delegated to the Regional Administrators of EPA by EPA Delegation Order Nos. 14-14-A, 14-14-C and 14-14-D and, subsequently, to the EPA Region 10 Unit Managers by Regional Redelegation Orders R10 14-14-A and 14-14-B.

[2]/ The term "response actions" encompasses a broad variety of investigative, enforcement and cleanup activities. Response actions may involve "removal" or "remedial" actions. "Removal" actions typically are short-term, temporary, or interim measures for responding to the threats posed by hazardous substance contamination; "remedial" actions are designed to effect a permanent remedy. 42 U.S.C. §§ 9601(23) and (25). *Exxon Corp. v. Hunt*, 475 U.S. 355, 360 (1986).

[3]/ "Release" is broadly defined in Section 101(22) of CERCLA to include almost any conceivable escape of a hazardous substance into, or migration through, the environment. 42 U.S.C. §§ 9601(22).

[4]/ Section 107(a) of CERCLA imposes strict liability for response costs on, four classes of responsible persons: (1) current owners and operators of the contaminated facility; (2) owners and operators of the facility at the time of hazardous substance disposal; (3) those who arranged for the disposal at the facility (often referred to as "arrangers" or "generators"); and (4) transporters of the hazardous waste. 42 U.S.C. § 9607(a).

who is a party to an administrative order entered pursuant to an agreement under Section 122 of CERCLA and who fails or refuses to comply with any term or condition of the order or agreement shall be subject to a civil penalty in accordance with Section 109 of CERCLA, 42 U.S.C. § 9609. That Section authorizes the President to bring an action in the United States district court for the appropriate district to assess and collect a penalty of not more than $25,000 per day for each day during which a failure or refusal referred to in Section 122(*l*) of CERCLA continues.[5]/

## III.  SITE BACKGROUND

The River Terrace RV Park Site in Soldotna, Alaska ("Site") is a property comprised of approximately ten acres on the banks of the Kenai River in a mixed commercial/residential area of Soldotna, Alaska. The Hinkles own the Site, which they acquired in 1974 and on which they operate a recreational vehicle park catering to the sport fishing and tourism industry. A dry-cleaning business, which employed the solvent perchloroethylene ("PCE"), was operated on the Site from the 1960's to the 1980's. In 1992, the Alaska Department of Environmental Conservation ("ADEC") discovered twenty-two (22) drums at the Site, several of which were labeled as containing PCE. ADEC and the Hinkles conducted assessments of the soil and surface water at the Site and of river sediments adjacent to the Site. As of August, 1997, some 500 cubic yards of contaminated soil had been excavated into three storage cells as a result of this assessment work and additional, uncontained contaminated soil remained on Site. Consent Decree, Appendix A, pp. 5-6.

The Hinkles approached EPA about taking over the cleanup from the State of Alaska. EPA contacted ADEC, and the two agencies subsequently entered into a Memorandum of Understanding under which EPA was responsible for managing an immediate removal action to excavate and dispose of or treat the most highly contaminated soils. Shortly thereafter, EPA's Region 10 issued

---

[5]/   Pursuant to the Federal Civil Penalties Inflation Adjustment Act, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, federal agencies are required to issue regulations adjusting civil penalty amounts for inflation. EPA has adjusted the statutory maximum civil penalty twice. Between January 30, 1997 and March 15, 2004, the adjusted statutory maximum penalty was $27,500 per day per violation. After March 15, 2004, the adjusted statutory maximum penalty is $32,500. *See* Civil Monetary Penalty Inflation Adjustment Rule, 69 Fed. Reg. 7121, 7125 (Feb. 13, 2004).

an Administrative Order on Consent for Removal Action to the Hinkles pursuant to Sections 104, 106(a), 107 and 122 of CERCLA, 42 U.S.C. §§ 9604, 9606(a), 9607, and 9622. Consent Decree, Appendix A, p.4. The AOC required the Hinkles to perform a removal action and to reimburse EPA for response costs incurred by the United States in connection with that action. *Id.*, pp. 7-16. The Hinkles voluntarily entered into that AOC on August 29, 1997. *Id.*, p.25.

Under the terms of the AOC, EPA was to submit a bill for response costs to the Hinkles on a periodic basis, and the Hinkles were to remit a check to the Superfund[6] for the amount of the bill within thirty days' receipt of the bill. *Id.*, pp.15-16. On April 14, 1999, EPA sent the Hinkles its first bill for oversight costs. This bill sought $150,185.49 for costs incurred during fiscal year 1998. A subsequent bill, dated March 8, 2002, demanded payment of $5,529.26 for costs incurred during fiscal year 2000. Neither of these bills had been paid at the time the United States commenced suit.[7]

## IV. STANDARD FOR ENTRY OF THE CONSENT DECREE

### A. THE LAW AND PUBLIC POLICY FAVOR SETTLEMENTS

Entry of a settlement is a judicial act and, as such, requires approval by the court. In reviewing a settlement, the court's role is a limited one. The court may either approve or disapprove the settlement; it does not have power to rewrite the consent decree. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982).

The standard of review to be applied by a district court is whether the settlement is "reasonable, fair and consistent with the purposes of the statute under which the action is brought." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990). The court's inquiry is directed not to whether the court itself would have reached the particular settlement terms but, rather, whether the proposed settlement is a reasonable compromise and otherwise in the public interest. *Officers for Justice*, 688 F.2d at 625; *Citizens for a Better Environment v. Gorsuch*, 467 U.S. 1219 (1984).

---

[6]/ The "Superfund" is the Hazardous Substance Superfund established by 26 U.S.C. § 9507.

[7]/ The Hinkles had reimbursed EPA in 2000 for costs associated with oversight of the removal action during fiscal year 1999 ($74,339.90).

Settlement by way of consent decree is a "highly useful tool for government agencies, since it maximizes the effectiveness of limited law enforcement resources [and permits the government to] avoid the risks as well as costs of full scale litigation of each point." *United States v. City of Jackson*, 519 F.2d 1147, 1151-52 (5th Cir. 1975); *see also Securities and Exch. Comm'n v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) ("Unless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved."). Where the United States is a party to a consent decree, the balance of competing interests affected by the proposed settlement "must be left, in the first instance, to the discretion of the Attorney General." *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir.), (Attorney General must retain discretion in "controlling government litigation and in determining what is in the public interest").

### B.  THE PROPOSED CONSENT DECREE MUST BE FAIR, REASONABLE AND CONSISTENT WITH THE GOALS OF CERCLA

The district court's task in reviewing CERCLA consent decrees is to satisfy itself that the settlement is fair, reasonable, and consistent with the purposes CERCLA is intended to promote. *United States v. Montrose Chemical Corp.*, 50 F.3d 741 (9th Cir. 1995) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990)). This requires an examination of the settlement process to determine whether the decree is a product of both procedural and substantive fairness. *Id.* at 746. To measure procedural fairness, a court should "look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." *Cannons,* 899 F.2d at 86 (citations omitted). Where a consent decree simply recoups response costs already incurred, the court should evaluate substantive fairness by comparing the amount to be paid by the settling parties with the estimate of the total liability attributable to them. *Montrose Chemical Corp.*, 50 F.3d at 747 (consent decree recovering natural resource damages from settling defendants) (citing *United States v. Charles George Trucking*, 34 F.3d 1081, 1087 (1st Cir. 1994)). In the reasonableness calculus should be an evaluation of whether the terms of the settlement satisfactorily compensate the public for actual and anticipated costs of response action and whether it mirrors the relative strength of the parties' litigating positions. *Cannons,* 899 F.2d at 89-90. Lastly, the court should determine whether the proposed decree comports with CERCLA's goals of: (1) the prompt and effective response to

the problems posed nationally by hazardous waste disposal and (2) the imposition of the costs and responsibility for remedying the harmful conditions created by such hazardous waste disposal on those responsible for their creation. *Id.* at 90-91. As explained below, the Consent Decree presently before the Court satisfies all of these considerations.

### V. ARGUMENT

A. OVERVIEW OF PROPOSED CONSENT DECREE

If entered, the proposed Consent Decree would resolve all of the claims in this action. The Decree requires that, within ten days after entry of the Decree by the Court, the Hinkles pay to the United States $241,000 in response costs and a civil penalty of $7,500. Decree, ¶¶ 4-5. The Hinkles have agreed to pay interest and stipulated penalties for any failure to comply with those payment obligations, as well as any costs the United States incurs should it become necessary to enforce those obligations. *Id.*, ¶¶ 6-8. Upon entry of the Consent Decree, Defendants will receive the contribution protection afforded by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for matters addressed in the Decree. For purposes of this Decree, "matter addressed" means "Past Response Costs," *i.e.*, "all costs, including but not limited to direct and indirect costs, associated with the removal action described in the AOC that EPA or [the Department of Justice] on behalf of EPA has paid at or in connection with the Site through September 30, 2005, plus accrued Interest on all such costs through that date." *Id.*, ¶¶ 3(*l*) and 14.

B. THE PROPOSED DECREE IS FAIR AND REASONABLE AND COMPORTS WITH CERCLA'S GOALS

No one has raised doubt about the fairness of the proposed Consent Decree in this case. Procedurally speaking, each of the Parties was represented by experienced counsel, and the negotiations were both open and candid. The "United States Environmental Protection Agency And United States Department Of Justice Revised Model CERCLA Section 107 Consent Decree For Recovery Of Past Response Costs (2003)" served as the foundation for those portions of the Decree that pertain to reimbursement of response costs, thereby ensuring that those terms of settlement in this case were fair in comparison with settlements with other, similarly situated defendants. Likewise, the civil penalty provisions of the Decree follow closely the form of stipulated settlements

used in other penalty actions brought by the United States under the federal environmental laws.

    Substantively speaking, the Decree fairly reflects the liability of the Defendants for unreimbursed response costs. It requires the Hinkles to pay $241,000 in response costs plus interest from November 30, 2005 through the date of payment. This payment amount represents nearly all of the costs (95%) owing under the Administrative Order on Consent, inclusive of interest, as of September 30, 2005. This resolution reflects the parties' respective bargaining positions: the litigation risk to the United States on the merits of this case is small, yet continued prosecution subjects the Hinkles to payment of both their own legal costs and those of the United States and, consequently, could diminish to an unacceptable level the Hinkles' fiscal resources that would be used for payment of any judgment after litigation. The response costs payment required by the Decree is reasonable because it compensates the public for a high percentage of costs incurred by the United States and does so at the expense of those on whom CERCLA places responsibility for the remediation of conditions at the Site. This payment is consistent with the goals of CERCLA by replenishing the Superfund so that it may be used for the cleanup of other contaminated sites and by promoting early settlements. *See Montrose Chemical Corp.*, 50 F.3d at 745 (referring to CERCLA's "primary goal of encouraging early settlement"); *Aetna Cas. and Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1517 (9th Cir. 1991) ("A fundamental goal of CERCLA is to encourage and facilitate voluntary settlements").

    The proposed civil penalty of $7,500 in this case is also fair and reasonable and consistent with the purposes of the CERCLA penalty provisions. Section 109(c) of CERCLA, 42 U.S.C. § 9609(c), authorizes the imposition of up to $32,500 per day for each day in which a person fails or refuses to comply with an administrative order issued pursuant to Section 122 of CERCLA, 42 U.S.C. § 9622. Section 109(c) does not identify factors to be evaluated in assessing a civil penalty. Courts faced with this situation in cases where they are called upon to assess civil penalties under Section 104(e) of CERCLA have relied on the following five factors identified in making their penalty determinations: (1) the good or bad faith of the defendants; (2) injury to the public; (3) the defendants' ability to pay; (4) the desire to eliminate the benefits derived by the violation; and (5)

the necessity of vindicating the authority of the enforcing agency. *United States v. Gurley*, 235 F.Supp.2d 797, 806 (W.D. Tenn. 2002); *United States v. M. Genzale Plating, Inc.,* 807 F. Supp. 937, 938-39 (E.D.N.Y. 1992) (also finding these factors similar to those to be used in determining administrative penalties under Section 109(a)(3) of CERCLA) (citations omitted); *United States v. Timmons Corp.*, No. CIV103CV00951RFT, 2006 WL 314457 at *15 (N.D.N.Y. Feb. 8, 2006). The civil penalty required to be paid by the Hinkles is reasonable when these factors, and the stage of litigation at which settlement occurred in this case, are considered.

       The payment of a civil penalty in this case vindicates the United States' authority to require those who voluntarily enter into administrative orders to abide by their terms, and it establishes a deterrent to future recipients of administrative orders. The amount of proposed penalty in this case recognizes that there was likely very little economic benefit to the Hinkles from their violations. The payment of response costs to be made under the Decree will recoup not only the amount of the United States' underlying claim for response costs but interest through the date of payment, thereby reducing any benefit the Hinkles might have gained from their failure to pay on time. It recognizes too that the Hinkles are small business owners subject to the vagaries of the business world, but reinforces the notion that they necessarily incur costs for failing to comply with a CERCLA AOC and that others should be deterred from doing so. Accordingly, the civil penalty is fair and reasonable in light of the factors that govern the establishment of an appropriate civil penalty and is consistent with CERCLA's goal of minimizing litigation through settlement.[8]/

## VI. CONCLUSION

       In summary, the proposed settlement meets the standards for entry of a CERCLA consent decree -- fairness, reasonableness and consistency with the goals of the statute. The United States therefore submits that the deference to be accorded the proposed CERCLA consent decree is particularly strong in this instance where "affected parties, themselves knowledgeable and

---

[8]/ The statute contains an entire section devoted to the subject of settlements. *See* Section 122(a) of CERCLA, which details the terms and conditions of settlements and directs the President to "facilitate agreements [with potentially responsible parties] . . . in order to expedite effective remedial actions and minimize litigation." 42 U.S.C. § 9622(a).

represented by experienced lawyers, have hammered out an agreement at arm's length and advocate its embodiment in a judicial decree." *Montrose*, *supra,* 50 F.2d at 746.  No facts or considerations that warrant would either the modification of, of withdrawal from, the proposed Consent Decree by the United States have come to light since the time of its lodging.

Accordingly, the United States asks that the Court adopt the proposed Consent Decree by signing page 12 of that document (associated with Clerk's Docket No. 19) and entering it as an order of the Court.

RESPECTFULLY SUBMITTED this 13th day of March, 2006 at Anchorage, Alaska.

/s/ Regina R. Belt
REGINA R. BELT, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone:  (907) 271-3456
Facsimile:   (907) 271-5827
Email:   regina.belt@usdoj.gov

Attorney for Plaintiff United States

*OF COUNSEL:*

Jennifer Byrne
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of March, 2006, I served on the following counsel of record by the method identified below a copy of the foregoing MEMORANDUM SUPPORTING PLAINTIFF UNITED STATES' UNOPPOSED MOTION FOR ENTRY OF "CERCLA CONSENT DECREE FOR SETTLEMENT OF RESPONSE COSTS ASSOCIATED WITH THE RIVER TERRACE RV PARK SITE" to:

    Kneeland Taylor, Esquire    (Via U.S. First Class Mail, Postage Prepaid)
    Law Office of Kneeland Taylor, P.C.
    425 G Street, Suite 610
    Anchorage, Alaska 99501

/s/ Regina R. Belt