SEP 04 '97  03:05PM US EPA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECEIVED

97 SEP -5  AM 11:40

HEARINGS CLERK
EPA--REGION 10

### UNITED STATES
### ENVIRONMENTAL PROTECTION AGENCY
### REGION 10

| IN THE MATTER OF: | ) | ADMINISTRATIVE ORDER ON CONSENT FOR REMOVAL ACTION |
|---|---|---|
| River Terrace RV Park Soldotna, Alaska | ) ) ) | U.S. EPA, Region 10 |
| | ) | Docket No. 10-97-0139-CERCLA |
| Gary and Judith Hinkle, | ) ) | Proceeding Under Sections 104, 106(a), 107, and 122 of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. §§ 9604, 9606(a), 9607, and 9622 |
| Respondents. | ) ) ) ) ) ) | |

River Terrace Order on Consent
For Removal Response Activities - Page 1

APPENDIX _A_
Page _1_ of _32_

# TABLE OF CONTENTS

I. JURISDICTION AND GENERAL PROVISIONS ............................... 4

II. PARTIES BOUND ........................................................ 5

III. FINDINGS OF FACT .................................................... 5

IV. CONCLUSIONS OF LAW AND DETERMINATIONS ......................... 6

V. ORDER ................................................................. 7
    Designation of Contractor, Project Coordinator, and On-Scene Coordinator ........... 7
    Work to Be Performed .................................................. 8
    Work Plan and Implementation ......................................... 8
    Health and Safety Plan ................................................. 9
    Quality Assurance and Sampling ........................................ 9
    Post-Removal Site Control ............................................. 10
    Reporting ............................................................. 10
    Final Report .......................................................... 11
    Access to Property and Information .................................... 11
    Record Retention, Documentation, Availability of Information ............ 12
    Off-Site Shipments .................................................... 13
    Compliance With Other Laws ........................................... 13
    Emergency Response and Notification of Releases ....................... 13

VI. AUTHORITY OF THE EPA ON-SCENE COORDINATOR ..................... 14

VII. REIMBURSEMENT OF COSTS .......................................... 14

VIII. DISPUTE RESOLUTION ............................................... 15

IX. FORCE MAJEURE .................................................... 17

X. DELAY IN PERFORMANCE/STIPULATED PENALTIES ....................... 18

XI. RESERVATION OF RIGHTS ............................................ 19

XII. OTHER CLAIMS ..................................................... 20

XIII. COVENANT NOT TO SUE ............................................ 20

XIV. CONTRIBUTION PROTECTION ........................................ 21

XV. INDEMNIFICATION .................................................. 21

XVI. INSURANCE ........................................................ 22

XVII. FINANCIAL ASSURANCE ............................................ 22

XVIII. MODIFICATIONS .................................................. 22

XIX. ADDITIONAL REMOVAL ACTION ..................................... 23

River Terrace Order on Consent
For Removal Response Activities - Page 2

SEP 04 '97  03:05PM US EPF                                        P.4/33

XX.  NOTICE OF COMPLETION ................................................. 23

XXI.  SEVERABILITY ....................................................... 23

XXII.  EFFECTIVE DATE .................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

River Terrace Order on Consent
For Removal Response Activities - Page 3

# I. JURISDICTION AND GENERAL PROVISIONS

1.    This Administrative Order on Consent ("Order) is issued under the authority vested in the President of the United States by Sections 104, 106(a), 107, and 122 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9604, 9606(a), 9607, and 9622 ("CERCLA"). This authority was delegated to the Administrator of the United States Environmental Protection Agency ("EPA") by Executive Order No. 12580, January 23, 1987, 52 Federal Register 2923; redelegated to the EPA Regional Administrators by EPA Delegation Nos. 14-14-A, 14-14-C and 14-14-D; and further redelegated to EPA Region 10 Cleanup Unit Mangers by Regional Redelegation Order R10 14-14-A and 14-14-B on March 25, 1996.

2.    EPA Region 10 and Gary and Judith Hinkle ("Respondents") voluntarily enter into this Order to provide for the performance of a removal action by Respondents at the River Terrace RV Site ("site") and the reimbursement of response costs incurred by the United States in connection with this activity. The site is located at 44761 Sterling Highway on the north bank of the Kenai River in the City of Soldotna, Alaska, Section 32, Township 5N, Range 10W, of the Seward Meridian in the Kenai Peninsula Borough. The Order requires Respondents to conduct a removal action to abate an imminent and substantial endangerment to the public health, welfare, or the environment that may be presented by the actual or threatened release of hazardous substances, pollutants, and contaminants at or from the site.

3.    EPA Region 10 has notified the State of Alaska of this action under Section 106(a) of CERCLA, 42 U.S.C § 9606(a).

4.    Respondents' participation in this Order does not constitute an admission of liability nor an admission of the findings and determinations contained in this Order except in a proceeding to enforce the Order.

5.    Respondents shall comply with this Order. Respondents may not contest the validity of this Order.

River Terrace Order on Consent
For Removal Response Activities - Page 4

APPENDIX A
Page 4 of 32

## II. PARTIES BOUND

6.    This Order binds EPA, Respondents and Respondents' heirs, successors, and assigns. Any change in ownership or corporate status of Respondents including, but not limited to, any transfer of assets or real or personal property will not alter Respondents' responsibilities under this Order. Respondents are jointly and severally liable for carrying out all activities required by this Order. Compliance or noncompliance by one Respondent with any provision of this Order does not excuse or justify noncompliance by the other Respondent.

7.    Respondents shall ensure that their contractors, subcontractors, and representatives receive a copy of and comply with this Order. Respondents shall be responsible for any noncompliance with this Order.

## III. FINDINGS OF FACT

8.    The site is an approximately 10 acre property on the banks of the Kenai River in Soldotna, Alaska, in a mixed commercial/residential area. Respondents own the site, which they acquired in 1974. They operate a recreational vehicle park at the site that caters to the sport fishing and tourism industry.

9.    A dry-cleaning business was operated at the site from the 1960's to the 1980's when it was converted to its current use. During that time, perchloroethylene ("PCE") was used as a solvent in the dry-cleaning process.

10.    In 1992 during the investigation of a citizen's complaint, the Alaska Department of Environmental Conservation ("ADEC") discovered 22 drums, some containing hazardous substances, several of the drums displayed the original manufacturers label "perchloroethylene". Many of the drums contained waste oil and were disposed of accordingly. One 55 gallon drum labeled "perchloroethylene" had a hole approximately 1 inch in diameter in it's top. This drum contained an unknown waste and was disposed of through the Kenai Borough hazardous waste disposal program. The content of this drum remains undocumented.

River Terrace Order on Consent
For Removal Response Activities - Page 5

APPENDIX A
Page 5 of 32

1      11.    The primary contaminants of concern at the site are PCE and its degradation products.

2  The source of this contamination appears to have been the dry-cleaning operation that previously

3  occupied the property.

4

5      12.    Extensive assessments have been conducted by Respondents and ADEC of the soil,

6  surface water and river sediments adjacent to the site. The area of contaminated soils is well

7  characterized as a result of this assessment work. Approximately 500 cubic yards of contaminated

8  soil was excavated into three storage cells by the Respondent under ADEC oversight. These storage

9  cells remain on-site. Additional uncontained contaminated soil remains on-site as delineated in the

10  attached maps generated by the Respondents contractor (e.g.: Kennard Environmental Consultants).

11  No further action has been taken to remove the contaminated soils.

12      13.    The site assessments conducted by Respondents and ADEC have delineated three

13  discrete areas of highest contaminant concentration. See attached delineation maps (Source:

14  Kennard Environmental Consultants) . These are the areas designated for a removal action under this

15  Order.

16  .    14.    The site assessments conducted by Respondents and ADEC have determined the

17  contaminant concentrations in the three media tested.  These concentrations are as follows:

18

19      Soil: (Source: Kennard Environmental Consultants)

20      PCE up to 4,700 parts per million

21      River sediments adjacent to the site:(Source: ADEC Sediment and Water Quality Report)

22      PCE from 77 to 510 parts per billion

23      cis-1,2-dichloroethylene from 79 to 670 parts per billion

24      Surface water: (Source: ADEC Sediment and Water Quality Report)

25      PCE up to 23 parts per billion.

26

27

28  River Terrace Order on Consent
    For Removal Response Activities - Page 6

15. Contamination at the site poses an ecological risk. The Kenai River watershed is one of the most productive anadromous fish drainages in Alaska and supports one of the largest commercial, sport and subsistence fisheries in the state. PCE and its degradation products are considered toxic to aquatic life at low concentrations.

16. Contamination at the site may pose a threat to human health. Potential exposure pathways to the contaminants are through groundwater by way of direct ingestion and dermal contact with contaminated soil and sediments. PCE is a suspected human carcinogen

## IV. CONCLUSIONS OF LAW AND DETERMINATIONS

17. The site is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

18. The contaminants found at the site as set forth in paragraphs 10-14 above include "hazardous substances" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

19. Respondents are responsible parties under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

20. Conditions described in the Findings of Fact above constitute an actual or threatened "release" of a hazardous substance from the facility as defined by Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

21. The actual or threatened release of hazardous substances from the site may present an imminent and substantial endangerment to the public health, welfare, or the environment within the meaning of Section 106(a) of CERCLA, 42 U.S.C. § 9606(a).

22. The removal actions required by this Order are necessary to protect the public health, welfare, or the environment, and are not inconsistent with the National Contingency Plan ("NCP") or CERCLA.

## V. ORDER

### Designation of Contractor, Project Coordinator, and On-Scene Coordinator

23. Respondents shall perform the removal action required by this Order by retaining one

River Terrace Order on Consent
For Removal Response Activities - Page 7

1  or more contractors to perform the work. Respondents shall notify EPA of the names and

2  qualifications of any contractors within two business days of the effective date of this Order.

3  Respondents shall also notify EPA of the names and qualifications of any other contractors or

4  subcontractors retained to perform the removal action under this Order at least two days before

5  starting work. EPA may disapprove any contractor or subcontractor retained by the Respondents to

6  do the work. If EPA disapproves a selected contractor or the Respondents, Respondents shall retain

7  a different contractor within five business days following EPA's disapproval and shall notify EPA of

8  that contractor's name or Respondents and qualifications within five business days of EPA's

9  disapproval.

10     24.    Within two days after the effective date of this Order, Respondents shall designate a

11  Project Coordinator responsible for administration of all Respondents' actions required by the Order.

12  Respondents shall submit the designated coordinator's name, address, telephone number, and

13  qualifications to EPA. To the greatest extent possible, the Project Coordinator shall be present on

14  site or readily available during site work. EPA may disapprove any Project Coordinator named by

15  the Respondents. If EPA disapproves a selected Project Coordinator, Respondents shall retain a

16  different Project Coordinator and notify EPA of that person's name, address, telephone number, and

17  qualifications within five business days following EPA's disapproval. Receipt by Respondents'

18  Project Coordinator of any notice or communication from EPA relating to this Order shall constitute

19  receipt by Respondents.

20     25.    EPA has designated Matthew Carr in its Region 10 Office of Environmental Cleanup

21  as its On-Scene Coordinator ("OSC"). Respondents shall direct all submissions required by this

22  Order to the OSC at the following address:

23         U.S. EPA Region 10, Alaska Operations Office
           Federal Building Room 537
24         222 W. 7th Ave., # 19
           Anchorage, AK 99513-7588.
25
           26.    EPA and Respondents may change the designated OSC or Project Coordinator.
26
   Respondents shall notify EPA, five business days before any change is made. This initial
27
   River Terrace Order on Consent
28  For Removal Response Activities - Page 8

                                                    APPENDIX A
                                                    Page 8 of 32

1   notification may be oral  but shall be followed promptly by written notice.

2                           <u>Work to Be Performed</u>

3       27.    Respondents shall perform, at a minimum, the following removal action:

4       Phase I - excavate and stockpile all contaminated soils in excess of 11.5 ppm PCE as

5   delineated in the attached maps into a fully encapsulating storage cell.  Install and maintain

6   appropriate engineering controls to prevent the migration of contaminates into the Kenai River.

7   Conduct post-excavation sampling to confirm appropriate cleanup standards  are attained.  Backfill

8   excavation with clean soil or soil remediated to below approved cleanup levels . Phase I work shall

9   be completed by November 30, 1997.

10      Phase II - Subject contaminated soils to a thermal desorption treatment process or alternate

11  remediation process as approved by EPA.  Sample treated soils to confirm appropriate cleanup

12  standards  are attained.  Backfill treated soils onto the site.  Phase II work shall be completed by

13  September 1, 1998.

14                      <u>Work Plan and Implementation</u>

15      28.    Within two days after the effective date of this Order, Respondents shall submit a

16  draft Work Plan for performing the removal action set forth above to EPA for approval . The draft

17  Work Plan must provide a description of, and an expeditious schedule for, the actions required by

18  this Order.

19      29.    EPA may approve, disapprove, require revisions to, or modify the draft Work Plan

20  and approve it as modified.  If EPA requires revisions, Respondents shall submit a revised draft

21  Work Plan within two days of receipt of EPA's notification of the required revisions.  Respondents

22  shall implement the Work Plan as finally approved, in writing, by EPA in accordance with the

23  schedule approved by EPA.  Once approved, or approved with modifications, the Work Plan, the

24  schedule, and any subsequent modifications shall be incorporated into and made a fully enforceable

25  part of this Order.  Respondents shall notify EPA at least 48 hours before performing any on-site

26  work under the EPA-approved Work Plan.  Respondents may not begin or undertake any removal

27

28  River Terrace Order on Consent
    For Removal Response Activities - Page 9

1 | action at the site without prior written EPA approval.

2 | <center>Health and Safety Plan</center>

3 |     30.    Within two days after the effective date of this Order, Respondents shall submit for

4 | EPA review and comment a plan that ensures the protection of the public health and safety during

5 | performance of on-site work under this Order. This plan shall be prepared in accordance with EPA's

6 | current Standard Operating Safety Guide, dated June 1992. In addition, the plan must comply with

7 | all current applicable Occupational Safety and Health Administration regulations found at 29 C.F.R.

8 | Part 1910.

9 | <center>Quality Assurance and Sampling</center>

10 |     31.    All sampling and analyses performed under this Order shall conform to EPA

11 | direction, approval, and guidance regarding sampling, quality assurance/quality control ("QA/QC"),

12 | data validation, and chain-of-custody procedures. Respondents shall ensure that the laboratory used

13 | to perform the analyses participates in a QA/QC program that complies with the appropriate EPA

14 | guidance. Respondents shall follow the following documents, as appropriate, as guidance for

15 | QA/QC and sampling: "Quality Assurance/Quality Control Guidance for Removal Activities:

16 | Sampling QA/QC Plan and Data Validation Procedures", OSWER Directive Number 9360.4-01;

17 | "Environmental Response Team Standard Operating Procedures", OSWER Directive Numbers

18 | 9360.4-02 through 9360.4-08.

19 |     32.    Upon request by EPA, Respondents shall have a laboratory analyze samples

20 | submitted by EPA for quality-assurance monitoring. Respondents shall provide to EPA the QA/QC

21 | procedures followed by all sampling teams and laboratories performing data collection and/or

22 | analysis.

23 | <center>Post-Removal Site Control</center>

24 |     33.    In accordance with the Work Plan schedule or as otherwise directed by EPA,

25 | Respondents shall submit a proposal for post-removal site control within 30 days after issuance of

26 | the this Order consistent with Section 300.415(l) of the NCP and OSWER Directive 9360.2-02

27 |

28 | River Terrace Order on Consent
For Removal Response Activities - Page 10

1   (Policy on Management of Post-Removal Site Control). Upon written EPA approval, Respondents

2   shall implement the controls and shall provide EPA with documentation of all post-removal site

3   control arrangements.

<div align="center">Reporting</div>

5        34.    Respondents shall submit a written progress report to EPA concerning actions

6   undertaken under this Order every 10 days after the date of receipt of EPA's approval of the Work

7   Plan until termination of this Order, unless otherwise directed by the OSC in writing. These reports

8   shall describe all significant developments during the preceding period, including the actions

9   performed and any problems encountered, analytical data received during the reporting period, and

10  the developments anticipated during the next reporting period, including a schedule of actions to be

11  performed, anticipated problems, and planned resolutions of past or anticipated problems.

12

13       35.    Respondents shall, at least 30 days before conveying any interest in real property at

14  the site, give written notice that the property is subject to this Order to the transferee and written

15  notice to EPA and ADEC of the proposed conveyance, including the name and address of the

16  transferee. Respondents shall require that any successor comply with the immediately proceeding

17  sentence and the section on Access to Property and Information.

<div align="center">Final Report</div>

19       36.    Within 30 days after completion of all removal actions required under this Order, the

20  Respondents shall submit for EPA review and approval a final report summarizing the actions taken

21  to comply with this Order. The final report shall conform, at a minimum, with the requirements set

22  forth in Section 300.165 of the NCP entitled "OSC Reports." The final report shall include a good

23  faith estimate of total costs or a statement of actual costs incurred in complying with the Order, a

24  listing of quantities and types of materials removed off-site or handled on-site, a discussion of

25  removal and disposal options considered for those materials, a listing of the ultimate destination of

26  those sampling and analyses performed, and accompanying appendices containing all relevant

27  documentation generated during the removal action (such as manifests, invoices, bills, contracts, and

River Terrace Order on Consent
For Removal Response Activities - Page 11

1    permits). The final report shall also include the following certification signed by a person who

2    supervised or directed the preparation of that report:

> Under penalty of perjury, I certify that to the best of my knowledge, after appropriate
> inquiries of all relevant persons involved in the preparation of the report, the
> information submitted is true, accurate, and complete. I am aware that there are
> significant penalties for submitting false information, including the possibility of fine
> and imprisonment for knowing violations.

6    <u>Access to Property and Information</u>

7      37.    Respondents shall provide and/or obtain access to the site and off-site areas to which

8    access is necessary to implement this Order and provide access to all records and documents related

9    to the conditions at the site and the actions conducted under this Order. Access shall be provided to

10    EPA employees, contractors, agents, consultants and representatives. These individuals must be

11    permitted to move freely at the site and appropriate off-site areas to conduct actions which EPA

12    determines necessary. Respondents shall submit to EPA, upon request, the results of all sampling or

13    tests and all other data generated by Respondents or their contractors on Respondents' behalf during

14    implementation of this Order. ~~Respondents reserve the right to negotiate on-site access of ADEC~~

15    ~~personnel with the EPA OSC. All requests for access by ADEC personnel shall be directed to and~~

16    ~~approved by the EPA OSC only after consultation and concurrence of the respondent or respondents~~

17    ~~representative.~~

18      38.    Where action under this Order is to be performed in areas owned by, or in possession

19    of, someone other than Respondents, Respondents shall use their best efforts to obtain all necessary

20    access agreements within five days after the effective date of this Order, or as otherwise specified in

21    writing by the OSC. Respondents shall immediately notify EPA if, after using their best efforts, they

22    are unable to obtain these agreements. Respondents shall describe in writing their efforts to obtain

23    access to the extent necessary to effectuate the response actions described in this Order.

24    Respondents shall reimburse EPA for all costs and attorney fees incurred by the United States in

25    obtaining access.

26    <u>Record Retention, Documentation, Availability of Information</u>

27

28    River Terrace Order on Consent
      For Removal Response Activities - Page 12

1    39.    Respondents shall preserve all documents and information relating to work performed

2    under this Order and to the hazardous substances released at or from the site for ten years following

3    completion of the removal actions required by this Order. At the end of this ten year period and 30

4    days before any document or information is destroyed, Respondents shall notify EPA that the

5    documents and information are available to EPA for inspection and, upon request, shall provide the

6    originals or copies of the documents and information to EPA. Respondents shall provide documents

7    and information retained under this section at any time before expiration of the ten year period at the

8    written request of EPA.

9    40.    Respondents may assert a business confidentiality claim under 40 C.F.R.

10   § 2.203(b) with respect to part or all of any information submitted to EPA under this Order if the

11   claim is allowed by Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7). Analytical and other

12   data specified in Section 104(e)(7)(F) of CERCLA may not be claimed as confidential by the

13   Respondents. EPA shall disclose information covered by a business confidentiality claim only to the

14   extent permitted by, and by means of, the procedures set forth at 40 C.F.R. Part 2, Subpart B. If no

15   claim accompanies the information when it is received by EPA, EPA may make it available to the

16   public without further notice to Respondents. Respondents shall maintain a running log of

17   privileged documents on a document-by-document basis, containing the date, authors, addressees,

18   subject, the privilege or grounds claimed (such as, attorney work product, attorney-client), and the

19   factual basis for assertion of the privilege. Respondents shall keep the privilege log on file and

20   available for inspection. EPA may at any time challenge claims of privilege.

21                                   Off-Site Shipments

22   41.    All hazardous substances, pollutants, or contaminants removed off-site under this

23   Order for treatment, storage, or disposal shall be treated, stored, or disposed of at a facility in

24   compliance, as determined by EPA, with Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3),

25   and the "Revised Procedures for Implementing Off-Site Response Actions", OSWER Directive

26   Number 9834.11, November 13, 1987. EPA will provide information upon request on the

27

28   River Terrace Order on Consent
     For Removal Response Activities - Page 13

                                              APPENDIX _A_
                                              Page 13 of 32

1  acceptability of a facility under Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and the

2  OSWER directive.

<div align="center">Compliance With Other Laws</div>

4       42.    Respondents shall perform all actions required under this Order in accordance with all

5  applicable local, state, and federal laws and regulations except as provided in Section 121(e) of

6  CERCLA, 42 U.S.C. § 9621(e), and 40 C.F.R. Section 300.415(i).  In accordance with 40 C.F.R.

7  Section 300.415(i), all on-site actions required under this Order shall, to the extent practical as

8  determined by EPA considering the exigencies of the situation, attain applicable or relevant and

9  appropriate requirements ("ARARs") under federal environmental or state environmental or facility

10  siting laws.  See, "The Superfund Removal Procedures:  Guidance on the Consideration of ARARs

11  During Removal Actions", OSWER Directive No.9360.3-02, August 1991.

<div align="center">Emergency Response and Notification of Releases</div>

13      43.    If any incident or change in site conditions during the actions conducted under this

14  Order causes or threatens to cause an additional release of hazardous substances from the site or an

15  endangerment to the public health, welfare, or the environment, Respondents shall immediately take

16  all appropriate action.  Respondents shall take these actions in accordance with all applicable

17  provisions of this Order, including, but not limited to, the Health and Safety Plan, to prevent, abate,

18  or minimize any release or endangerment caused or threatened by the release.  Respondents shall

19  immediately notify the OSC at 907-271-3616 or, if the OSC is unavailable, the Regional Duty

20  Officer at 206-553-1263 of the incident or site conditions.  If Respondents fail to respond, EPA may

21  respond to the release or endangerment and reserves the right to pursue cost recovery.

22      44.    If any hazardous substance is released from the site, Respondents shall immediately

23  notify the Regional Duty Officer at (206) 553-1263 and the National Response Center at (800) 424-

24  8802.  Respondents shall submit a written report to EPA within seven days after each release, setting

25  forth the events that occurred and the measures taken or to be taken to mitigate any release or

26  endangerment caused or threatened by the release and to prevent the reoccurrence of a release.  This

27

28  River Terrace Order on Consent
    For Removal Response Activities - Page 14

APPENDIX A
Page 14 of 32

1  reporting requirement is in addition to reporting under Section 103(c) of CERCLA, 42 U.S.C.

2  § 9603(c), and Section 304 of the Emergency Planning and Community Right-To-Know Act of

3  1986, 42 U.S.C. § 11001, et. seq.

4  ## VI. AUTHORITY OF THE EPA ON-SCENE COORDINATOR

5      45.  The OSC will oversee the Respondents' implementation of this Order. The OSC has

6  the authority vested in an OSC by the NCP, including the authority to halt, conduct, or direct any

7  work required by this Order or to direct any other removal action undertaken at the site. Absence of

8  the OSC from the site shall not be cause for stoppage of work unless the OSC specifically directs. .

9  ## VII. REIMBURSEMENT OF COSTS

10      46.  Respondents shall reimburse EPA for all response costs, not inconsistent with the

11  NCP, incurred by the United States. Response costs are all costs, including, but not limited to, direct

12  and indirect costs, that the United States incurs in reviewing or developing plans, reports, and other

13  items under this Order verifying the work, or otherwise implementing, overseeing, or enforcing this

14  Order.

15      47.  On a periodic basis, EPA will submit to Respondents a bill for response costs that

16  includes a SCORES or other cost summary used by EPA as the basis for payment demands.

17  Respondents shall, within 30 days of receipt of the bill, remit a cashier's or certified check for the

18  amount of the bill made payable to the "Hazardous Substance Superfund", at the following address:

19      Mellon Bank
    EPA Region 10
20      ATTN: Superfund Accounting
    P.O. Box 360903M
21      Pittsburgh, PA 15251.

22      48.  Respondents shall simultaneously transmit a copy of the check to EPA's OSC.

23  Payments must be designated as "Response Costs - River Terrace PCE Site" and must reference the

24  payor's name and address, the EPA site identification number (104D), and the docket number of this

25  Order (10-97-0139-CERCLA).

26      49.  If payment for past response costs is not made within 30 days after Respondents'

27

28  River Terrace Order on Consent
For Removal Response Activities – Page 15

1   receipt of the bill, Respondents shall pay interest on the unpaid balance. Interest is established at the

2   rate specified in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). The interest on response costs

3   will begin to accrue on the date of the Respondents' receipt of the bill. Interest shall accrue through

4   the date of the payment. Payments of interest made under this paragraph shall be in addition to all

5   other remedies or sanctions available to the United States by virtue of Respondents' failure to make

6   timely payments under this section.

7          50.    Respondents may dispute all or part of a bill for response costs submitted under this

8   Order if Respondents believe that EPA has made an accounting error or that a cost item is

9   inconsistent with the NCP.

10         51.    If any dispute over costs is resolved before payment is due, the amount due will be

11  adjusted as necessary. If the dispute is not resolved before payment is due, Respondents shall pay

12  the full amount of the uncontested costs into the Hazardous Substance Fund as specified above on or

13  before the due date. Within the same time period, Respondents shall pay the full amount of the

14  contested costs into an interest-bearing escrow account. Respondents shall simultaneously transmit

15  a copy of both checks to the OSC. Respondents shall ensure that the prevailing party or parties in

16  the dispute shall receive the amount upon which they prevailed from the escrow funds plus interest

17  within ten days after the dispute is resolved.

18                              VIII.  DISPUTE RESOLUTION

19         52.    Any dispute which arises under or with respect to this Order will, in the first instance,

20  be the subject of informal negotiations between Respondents and EPA. The period for informal

21  negotiations may not exceed 15 days from the time the dispute arises, unless this period is modified

22  by written agreement of Respondents and EPA. The dispute will be considered to have arisen when

23  Respondents send EPA a written Notice of Dispute. If the parties cannot resolve a dispute

24  informally, the position advanced by EPA will prevail unless formal dispute resolution is invoked

25  under this section. The dispute resolution procedures of this section will be the exclusive

26  mechanism to resolve disputes arising under or with respect to this Order. The fact that dispute

27

28  River Terrace Order on Consent
    For Removal Response Activities - Page 16

                                                    APPENDIX  A
                                                    Page 16 of 32

1  resolution is not specifically referenced in a section of this Order does not bar Respondents from

2  invoking the procedures with respect to any matter in dispute.

3       53.   Within 20 days after the conclusion of the informal negotiation period, Respondents

4  may request a determination by EPA's Region 10 Environmental Cleanup Office Director by

5  submitting a written Statement of Position to EPA on the matter in dispute including, but not limited

6  to, any factual data, analysis, or opinion supporting that position and any supporting documentation

7  relied upon by Respondents.

8       54.   Within 20 days after receipt of Respondents Statement of Position, EPA will provide

9  its Statement of Position to Respondents, including, but not limited to, any factual data, analysis, or

10  opinion supporting its position and any supporting documentation relied upon by EPA. If EPA does

11  not provide its Statement of Position within 20 days, stipulated penalties will not accrue beyond the

12  20th day until EPA has provided its Statement of Position.

13       55.   EPA will maintain an administrative record of the dispute which will contain all

14  Statements of Position, including supporting documentation, submitted under this section. Where

15  appropriate, EPA may allow submission of supplemental Statements of Position by the parties.

16       56.   Within 20 days after receipt of EPA's Statement of Position, the Environmental

17  Cleanup Office Director will issue a final administrative decision resolving the dispute based on the

18  administrative record described in paragraph 55 above. If the Environmental Cleanup Office

19  Director does not issue a final administrative decision within 20 days, stipulated penalties will not

20  accrue beyond the 20th day until a final administrative decision has been issued. This decision will

21  bind Respondents unless, in response to Respondents' failure to comply, EPA seeks to enforce the

22  decision in court and Respondents prevail on judicial review as provided in Paragraph 57 below.

23       57.   If Respondents do not comply with EPA's final administrative decision, EPA reserves

24  the right, in its sole discretion, to seek either stipulated or statutory penalties from Respondents for

25  violation of the Order and/or to pursue any other enforcement option provided in CERCLA. If EPA

26  moves to enforce this Order in court, Respondents may request judicial review of EPA's final

27

28  River Terrace Order on Consent
   For Removal Response Activities - Page 17

1   administrative decision based on the administrative record developed during the dispute resolution

2   process. Any judicial review of the dispute will be under the arbitrary and capricious standard.

3       58.    While a matter is pending in dispute resolution, Respondents are not relieved of their

4   obligations to perform other activities and submit deliverables in accordance with the schedules

5   developed under this Order. The invocation of dispute resolution does not stay the accrual of

6   stipulated or statutory penalties under this Order. Any issue submitted for dispute resolution may

7   not be the subject of an enforcement action until the dispute resolution process has been exhausted.

8                                   IX.  FORCE MAJEURE

9       59.    Respondents agree to perform all requirements under this Order within the time limits

10  established unless performance is delayed by a *force majeure*. A *force majeure* is any event arising

11  from causes beyond Respondents' control including, but not limited to, actions of their contractors

12  and subcontractors, that delays or prevents performance of any obligation under this Order despite

13  Respondents' best efforts to fulfill the obligation. *Force majeure* does not include financial inability

14  to complete the work or increased cost of performance.

15      60.    Respondents shall notify EPA orally within 24 hours after the event and in writing

16  within five days after Respondents become or should have become aware of events which constitute

17  a *force majeure*. Notice must identify the event causing the delay and anticipated length of delay,

18  including necessary demobilization and re-mobilization; state the measures taken or to be taken to

19  minimize the delay; and estimate the timetable for implementation of remedial measures.

20  Respondents shall take all reasonable measures to avoid and minimize the delay. Failure to comply

21  with the notice provision of this action shall waive Respondents' right to claim *force majeure*.

22      61.    If EPA determines a delay in performance of a requirement under this Order is or was

23  attributable to a *force majeure*, the time period for performance of that requirement will be extended

24  as EPA considers necessary, but not less than the actual time of the *force majeure* delay.  An

25  extension will not alter Respondents' obligation to perform or complete other tasks required by the

26  Order that are not directly affected by a *force majeure*.

27

28  River Terrace Order on Consent
    For Removal Response Activities - Page 18

## X. DELAY IN PERFORMANCE/STIPULATED PENALTIES.

62.     For each day that Respondents fail to complete a deliverable in a timely manner, fail to produce a deliverable of acceptable quality, or otherwise fail to perform in accordance with the requirements of this Order, Respondents shall be liable for stipulated penalties. Penalties begin to accrue on the day that performance is due or a violation occurs, and extend through the period of correction. Where a revised submission by Respondents is required, stipulated penalties will continue to accrue until a satisfactory deliverable is produced. EPA will provide written notice for violations that are not based on timeliness. Penalties will accrue from the day a violation begins, regardless of when or whether notice is provided. Payment is due within 30 days of receipt of a demand letter from EPA.

63.     Respondents shall pay interest on the unpaid balance, which shall begin to accrue at the end of the 30-day period, at the rate established by the Department of Treasury under 30 U.S.C. § 3717. Respondents shall pay a handling charge of 1 percent, to be assessed at the end of each 30 day period, and a 6 percent per annum penalty charge, to be assessed if the penalty is not paid in full within 90 days after it is due.

64.     Respondents shall make all payments by forwarding a check to:

> Mellon Bank
> EPA Region 10
> ATTN: Superfund Accounting
> P.O. Box 360903M
> Pittsburgh, Pennsylvania 15251.

65.     Checks must identify the name of the site, River Terrace RV Park, the site identification number, 104D, and the docket number and title of this Order. Respondents shall forward a copy of the check and/or transmittal letter to the EPA Project Coordinator.

66.     For the original and any revised Work Plan, stipulated penalties will accrue in the amount of $500 per day per violation for the first seven days of noncompliance, $1,000 per day per violation for the 8th through 14th day of noncompliance, $3,000 per day per violation for the 15th day through the 30th day, and $5,000 per day per violation for all violations lasting beyond 30 days.

River Terrace Order on Consent
For Removal Response Activities - Page 19

1    .67.    For any other non-compliance with this Order, stipulated penalties will accrue in the

2    amount of $250 per day per violation for the first week of noncompliance, $500 per day per violation

3    for the 8th through 14th day of noncompliance, $1,500 per day per violation for the 15th day through

4    the 30th day of noncompliance, and $4,000 per day per violation for all violations lasting beyond 30

5    days.

6    68.    Respondents may dispute EPA's right to the stated amount of penalties by invoking

7    the dispute resolution procedures under Section VIII above.  Penalties will accrue but need not be

8    paid during the dispute resolution period.  If Respondents do not prevail upon resolution, all

9    penalties will be due to EPA within 30 days of resolution of the dispute.  If Respondents prevail

10   upon resolution, no penalties will be paid.

11   69.    If EPA provides for corrections to be reflected in the next deliverable and does not

12   require resubmission of that deliverable, stipulated penalties for that interim deliverable will cease to

13   accrue on the date of that decision by EPA.

14   70.    The stipulated penalties provisions do not preclude EPA from pursuing any other

15   remedies or sanctions which are available to EPA because of Respondents' failure to comply with

16   this Order.  Payment of stipulated penalties does not alter Respondents' obligation to complete

17   performance under this Order.

18                              XI.  RESERVATION OF RIGHTS

19   71.    Except as otherwise specifically provided, nothing in this Order limits the  authority

20   of EPA or the United States to take, direct, or order actions necessary to protect public health,

21   welfare, or the environment and to prevent, abate, or minimize an actual or threatened release of

22   hazardous substances, pollutants, or contaminants at or from the site.  Nothing in this Order prevents

23   EPA from pursuing legal or equitable relief to enforce this Order, taking other legal or equitable

24   action EPA considers necessary, or requiring Respondents to perform additional activities under

25   CERCLA or other applicable law.  EPA reserves the right to bring an action against Respondents

26   under Section 107 of CERCLA, 42 U.S.C. § 9607, for recovery of response costs incurred by the

27

28   River Terrace Order on Consent                      APPENDIX  A
     For Removal Response Activities - Page 20           Page  20  of  32

1  United States under this Order or otherwise site-related and not reimbursed by Respondents.

2  ## XII. OTHER CLAIMS

3  72.    The United States and EPA assume no liability for injuries or damages to persons or

4  property resulting from any acts or omissions of Respondents.  Neither the United States nor EPA

5  may be considered a party to any contract entered into by the Respondents or their employees,

6  agents, successors, representatives, assigns, contractors, or consultants in carrying out actions under

7  this Order.

8  73.    Except as provided below in the section entitled "Covenant Not to Sue," nothing in

9  this Order constitutes a satisfaction or release from any claim or cause of action against the

10  Respondents or any person not a party to this Order for any liability that person may have under

11  CERCLA, other statutes, or the common law including, but not limited to, any claims of the United

12  States for costs, damages, and interest under Sections 106(a) and 107(a) of CERCLA, 42 U.S.C.

13  §§ 9606(a) and 9607(a).

14  74.    This Order does not constitute a preauthorization of funds under Section 111(a)(2) of

15  CERCLA, 42 U.S.C. § 9611(a)(2).  Respondents waive any claim to payment under Sections 106(b),

16  111, and 112 of CERCLA, 42 U.S.C. §§ 9606(b), 9611, and 9612, against the United States or the

17  Hazardous Substance Superfund arising out of any action performed under this Order.

18  ## XIII. COVENANT NOT TO SUE

19  75.    Except as otherwise provided in this Order, upon issuance by EPA of a notice of

20  completion under Section XX below,  EPA covenants not to sue Respondents for damages or civil

21  penalties or to take administrative action against Respondents for any failure to perform removal

22  actions agreed to in this Order.

23  76.    Except as otherwise provided in this Order, in consideration and upon Respondents'

24  payment of the response costs specified in Section VII above, EPA covenants not to sue or to take

25  administrative action against Respondents under Section 107(a) of CERCLA, 42 U.S.C.§ 9607(a),

26  for recovery of response costs incurred by the United States in connection with this Order.  This

27

28  River Terrace Order on Consent
    For Removal Response Activities - Page 21

1    covenant not to sue takes effect upon the receipt by EPA of the payments required by Section VII.

2    77.    Covenants not to sue are conditioned upon the complete and satisfactory performance

3    by Respondents of their obligations under this Order.  These covenants not to sue extend

4    Respondents' obligations under this Order, but not the obligations of any other person.

5    XIV.  CONTRIBUTION PROTECTION

6    78.    Respondents are entitled to protection from contribution actions or claims for matters

7    addressed in this Order to the extent provided by Sections 113(f)(2) and 122(h)(4) of CERCLA, 42

8    U.S.C. §§ 9613(f)(2) and 9622(h)(4).  Nothing in this Order precludes the United States or the

9    Respondents from asserting any claims, causes of action or demands against any person not a party

10   to this Order for indemnification, contribution, cost recovery, or any other claim.

11   XV.  INDEMNIFICATION

12   79.    Respondents shall indemnify, save and hold harmless the United States, its officials,

13   agents, contractors, subcontractors, employees, and representatives from all claims or causes of

14   action arising from, or on account of, acts or omissions of Respondents or Respondents' heirs,

15   employees, agents, contractors, subcontractors, receivers, trustees, successors or assigns in carrying

16   out actions under this Order and for any claim for damages or reimbursement arising from or on

17   account of any contract, agreement, or arrangement between either or both Respondents and any

18   other person for performance of work on or relating to the site, including claims on account of

19   construction delays.  Respondents shall pay the United States all costs incurred by the United States,

20   including litigation costs arising from or on account of claims made against the United States based

21   on any act or omissions described in this section.

22   XVI.  INSURANCE

23   80.    At least seven days before starting any on-site work under this Order, Respondents

24   shall secure and maintain for the duration of this Order comprehensive general liability insurance

25   and automobile insurance with limits of $1 million, combined single limit.  Within the same time

26   period,  Respondents shall provide EPA with certificates of this insurance and a copy of each

27

28   River Terrace Order on Consent                              APPENDIX _A_
     For Removal Response Activities - Page 22                   Page _22_ of _32_

1  insurance policy. If Respondents demonstrate by evidence satisfactory to EPA that any contractor

2  or subcontractor maintains insurance equivalent to that described above or insurance covering some

3  or all of the same risks but in an equal or lesser amount, then Respondents need provide only that

4  portion of the insurance described above which is not maintained by a contractor or subcontractor.

5                              XVII.  FINANCIAL ASSURANCE

6       81.     Within 30 days after the effective date of this Order and every 30 days after until EPA

7  issues a notice of completion of work under Section XX, Respondents shall demonstrate to EPA that

8  either one or both of them meets one of the financial assurance mechanisms specified in 40 C.F.R.

9  Section 264.143 for the sufficient estimated costs of work to be performed by Respondents under

10  this Order.

11                              XVIII.  MODIFICATIONS

12       82.     The OSC may modify any plan, schedule or statement of work.  Any modification

13  must be in writing.  The parties may modify any other requirements of this Order by mutual written

14  agreement.

15       83.     To deviate from any approved work plan or schedule or statement of work,

16  Respondents, through their Project Coordinator, must submit for EPA approval a written request

17  describing the proposed change and the reason for it.  No informal advice, guidance, suggestion, or

18  comment by EPA about any report, plan, specification, schedule, or other writing Respondents

19  submit to EPA will relieve Respondents of their obligation to obtain the formal approval required by

20  this section or to comply with all requirements of this Order until its modification.

21                              XIX.  ADDITIONAL REMOVAL ACTION

22       84.     If EPA determines that additional removal action not included in an approved work

23  plan is needed to protect public health, welfare, or the environment, EPA will so notify Respondents.

24  Unless otherwise stated by EPA, within seven days after receipt of notice from EPA that additional

25  removal actions are necessary to protect public health, welfare, or the environment, Respondents

26  shall notify EPA of their willingness to undertake the additional work and shall submit a work plan

27

28  River Terrace Order on Consent                         APPENDIX  A
    For Removal Response Activities - Page 23              Page  23 of  32

1  for this additional work to EPA within the time specified in EPA's notice. Following EPA's written

2  approval of the additional work plan, Respondents shall perform the additional work.

3  ## XX. NOTICE OF COMPLETION

4  85.    EPA will provide Respondents with a notice of completion after EPA has reviewed

5  Respondent's final report and determined that Respondents have fully performed all removal actions

6  required by this Order. If EPA determines that any required removal actions have not been

7  completed, EPA will so notify Respondents, provide a list of the deficiencies, and require

8  Respondents to modify the work plan as appropriate to remedy the deficiencies. Respondents shall

9  implement the modified and approved work plan and submit a modified final report as EPA requires.

10  Failure by Respondents to implement the approved modified work plan is a violation of this Order.

11  ## XXI. SEVERABILITY

12  86.    If a court issues an order that invalidates any provision of this Order or finds that

13  Respondents have sufficient cause not to comply with one or more of its provisions, Respondents

14  remain bound to comply with all provisions not invalidated or determined to be subject to a

15  sufficient cause defense by a court of competent jurisdiction.

16  ## XXII. EFFECTIVE DATE

17  87.    This Order takes effect one day after signature by EPA and notice to Respondents.

18

19

20

21

22

23

24

25

26

27

28

APPENDIX _A_
Page _24_ of _32_

River Terrace Order on Consent
For Removal Response Activities - Page 24

1

2

3    The undersigned representative of Respondents certifies that he is fully authorized to enter into the

4    terms and conditions of this Order and to bind Respondents to this document.

5

6    Agreed this 29 day of August, 1997

7    By _Gary C Hinkle_

8    Title _Respondent_

9    It is so ORDERED and Agreed this 29ᵗʰ day of August, 1997.

10

11    _William Longston_   Date: 8/29/97

12    William Longston
      Acting Unit Manager
      Emergency Response/Site Cleanup Unit 1

13    Office of Environmental Cleanup
      U.S. Environmental Protection Agency Region 10

14    EFFECTIVE DATE: 2 SEPT 97

15

16

17

18

19

20

21

22

23

24

25

26

27    River Terrace Order on Consent                APPENDIX  A
28    For Removal Response Activities – Page 25     Page  25 of  32

SEP 04 '97  03:17PM US EPf    P.27/33





APPENDIX A
Page 27 of 32

SEP 04 '97 03:18PM US EP'    /    P.29/33



SEP 04 '97  03:19PM US EF                                                P. 30/33



| Delineation Map of **River Terrace RV Park** Located within the snd4 section 34, T8N, R19W. S. M., City of Soldotna, Kenai Recording District, Kenai Peninsula Borough, Alaska | Prepared for Gary Heikie PO Box 222 Soldotna, AK 99669 **K**ennard **E**nvironmental **C**onsultants | SCALE: 68.36 mm = 100 FT ☐ 0.03 ppm or greater ☐ 1 ppm or greater ☐ 5 ppm or greater ☐ 10 ppm or greater Depth: **20 Foot Lift** Type: **PCE** | **LEGEND** U  Concentrate was not detected UC  Sample could not be collected NA  Sample was not analyzed 〰 Topography Lines o···o Fence |
| --- | --- | --- | --- |

**NOTES:** Above map was recreated from a *Topographic Map* by Aero Map USA Inc.

APPENDIX  A
Page  29 of  32



SEP 04 '97  03:20PM US EP^  /                                                                P.32/33





**KENAI RIVER**

| Delineation Map of PCE contaminated soils | Prepared for : Gary Hinkle PO Box 322 Soldotna, AK 95669 | | LEGEND |
|---|---|---|---|

**River Terrace RV Park**
Located within the south section 34, T5N, R10W, S. M., City of Soldotna, Kenai Recording District, Kenai Peninsula Borough, Alaska.

By : Kennard Environmental Consultants
PO Box 322 Palmer, AK 99645    (907)376-4141

SCALE: 68.36 mm = 100 FT

Depth: **Surface**
Type: **Tetrachloroethylene**

☐ 0.02 ppm or greater
☐ 1 ppm or greater
☐ 5 ppm or greater
☐ 10 ppm or greater

**LEGEND**
U    Contaminate was not detected
UC   Sample could not be collected
NA   Sample was not analyzed

∿ Topography Lines
o—o Fence

**NOTES:** (1) Above map was recreated from a *Topographic Map* by Aero Map USA Inc. (2) Diesel, Gasoline, Trichloroethene, and cis-1,2-Dichloroethene.